IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 6, 2021 Session

## STATE OF TENNESSEE v. TERRY NEWSOM

**Appeal from the Circuit Court for Madison County**
**No. 19-630   Roy B. Morgan, Jr., Judge**

_____

### No. W2020-00695-CCA-R3-CD

_____

A Madison County jury convicted the Defendant, Terry Newsom, of evading arrest, reckless endangerment, and driving with a suspended license.  The trial court imposed an effective three-year sentence to be served in the Tennessee Department of Correction and ordered the Defendant to pay the fines imposed by the jury.  On appeal, the Defendant argues that the evidence was insufficient to support his conviction for reckless endangerment, that the trial court erred when it sentenced him, and that the fines were improperly imposed.  After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

George M. Googe, District Public Defender; Jeremy B. Epperson, Assistant Public Defender, Jackson, Tennessee (at trial); Kendall F. Stivers, Assistant Public Defender, Franklin, Tennessee (on appeal), for the appellant, Terry Newsom.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Joshua Dougan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

        This case arises from an altercation that ensued between the Defendant and his children's mother ("the mother") at her residence ("the residence") when he arrived to pick up their daughters.  Law enforcement was called to the residence, and the Defendant fled in his vehicle.  A high-speed chase ensued with the Defendant's nine-year-old daughter in

the backseat and a passenger in the front seat of the vehicle driven by the Defendant. For these events, a Madison County grand jury indicted the Defendant for: three counts of aggravated assault; two counts of domestic assault; one count of vandalism; one count of felony evading arrest; one count of felony reckless endangerment with a deadly weapon (vehicle); and one count of driving with a suspended license. Prior to trial, on the State's motion, the trial court dismissed the three counts of aggravated assault and the two counts of domestic assault.

## A. Trial

At the Defendant's trial, the parties presented the following evidence: Zachary Beard testified that he was a police officer with the Jackson Police Department, working patrol, when on April 11, 2019, at approximately 9:30 p.m., he responded to a call from dispatch. The dispatcher directed him to an address and advised him to look for a tan Buick parked at the residence. Officer Beard proceeded to the residence and spotted the tan Buick, which was driving away as Officer Beard pulled up. Officer Beard initiated his blue lights to stop the vehicle, and it "started to speed off." Officer Beard initiated his sirens and pursued the vehicle reaching speeds of 60 mph. The vehicle continued to evade Officer Beard until the driver crashed the vehicle into a fence. The driver, identified as the Defendant, proceeded to exit the vehicle and flee on foot, leaving a passenger in the front seat and his nine-year-old daughter in the back seat. Officer Beard pursued the Defendant on foot and eventually detained him after activating his taser.

As Officer Beard pursued the Defendant on foot, he passed by the tan Buick and heard crying and screaming from inside. Officer Beard knew his partner following behind him would attend to the vehicle's occupants. During his foot pursuit of the Defendant, Officer Beard verbally ordered him to stop several times. A search of the Defendant's vehicle revealed no child seat or booster seat, although Officer Beard could not say that one was required for the nine-year-old. Officer Beard was shown photographs of the Defendant's vehicle, and he identified damage to the vehicle sustained during the crash.

On cross-examination, Officer Beard agreed that he was dispatched to the residence initially on a "domestic disturbance" call.

Robert Stevens, a Jackson Police Officer, testified that he was dispatched to the same residence on April 11, 2019, and assisted Officer Beard in the pursuit of the Defendant's vehicle. Officer Stevens arrived at the scene of the crash as Officer Beard was taking the Defendant into custody. Officer Stevens observed that the Defendant's vehicle, had crashed into a "cinderblock barrier." He recalled a "small child" being present as well as another passenger who was being detained. He described the child as elementary-school aged and stated that she was crying and "emotionally distraught." Officer Stevens photographed the Defendant's vehicle, which he described as suffering "heavy damage" to

the front end. There was significant damage to the cinderblock barrier from the vehicle's impact.

Isaiah Thompson, a Jackson Police Officer working in the domestic violence unit, testified that the Defendant was not facing charges of a domestic violence. Officer Thompson testified that his investigation revealed that, on the day of the crash, the Defendant's driver's license was suspended according to the Tennessee Department of Safety. On cross-examination, Officer Thompson agreed that the Defendant had been indicted with multiple counts of domestic assault related to these events and that those charges were eventually dismissed.

On behalf of the Defendant, Sedarious Fuller testified that he was incarcerated at the time of trial pursuant to an unrelated matter. He testified that he was with the Defendant on the night of April 11 and gave a statement to police related to his involvement in the night's events. Mr. Fuller recalled that, on the night of April 11, he accompanied the Defendant to pick up the Defendant's daughter from the mother's house. When they arrived at the residence, an altercation commended between the mother and the Defendant. Mr. Fuller stated that they were arguing and the mother hit the Defendant with a bat. Mr. Fuller recalled that there were twenty people at the residence, and they "jumped" the Defendant. Mr. Fuller was sitting in the Defendant's vehicle in the driver's seat. At some point, the Defendant put his daughter in the back seat and got in the driver's seat; Mr. Fuller sat in the passenger seat. The Defendant drove the vehicle away from the residence, and, according to Mr. Fuller, was driving between 40 and 45 mph. Mr. Fuller did not know whether the Defendant drove any faster. At some point, the Defendant ran the vehicle into "some bricks," and then he fled while Mr. Fuller and the Defendant's daughter remained in the vehicle. Mr. Fuller denied that he or the child were hurt in the crash. Mr. Fuller denied that the Defendant assaulted anyone at the residence.

On cross-examination, Mr. Fuller agreed that he gave a statement to the police saying that the Defendant would not stop his vehicle when the police pursued him. Mr. Fuller recalled seeing the police blue lights. Mr. Fuller stated that he put a seatbelt on the child when she got inside the vehicle.

The Defendant testified that he drove to the residence on April 11 to pick up his children from their mother. His interaction with the mother "escalated," and they proceeded to argue and "one thing led to another." The mother threatened to call the police and send him to jail. He recalled that a "crowd" began to form, which prompted him to leave the scene. He stated that his daughter was in the back seat and was wearing a seatbelt. He stated that he would never endanger his daughter's life and that he was not a criminal. The Defendant stated that the mother hit him with a bat during their argument. The Defendant denied that he was traveling 60 mph or that his daughter was screaming and crying. The Defendant stated that he stopped running when the officer threatened to activate his taser.

- 3 -

On cross-examination, the Defendant agreed that he did not have a valid driver's license on the day of the incident. He agreed that he was driving Mr. Fuller's vehicle. The Defendant stated that he saw the police blue lights and "tried" to stop the vehicle. He denied "trying to evade" the police and said the vehicle would not stop until it hit the cinderblock pile.

Based upon this evidence, the jury convicted the Defendant of felony evading arrest by use of a motor vehicle and imposed a fine of $1,500. The jury convicted the Defendant of the lesser-included offense of misdemeanor reckless endangerment and imposed a fine of $2,500. The jury also convicted the Defendant of driving with a suspended license and imposed a $250 fine. The jury found the Defendant not guilty of vandalism.

## B. Sentencing

The trial court held a sentencing hearing, at which the presentence report was entered as an exhibit. The Defendant's girlfriend testified that the Defendant was employed and had a good relationship with his children. She described the Defendant's relationship with the mother as "okay." She agreed that he had a criminal history dating back ten or more years but stated that the Defendant was a hard worker who provided for her and his children.

The Defendant testified that he had a criminal record from when he was a young man. On cross-examination, he testified about the events on April 11, stating that he was not thinking but also that he was not driving at a high rate of speed.

The trial court found that the Defendant was a Range II offender with a release eligibility of thirty-five percent. The trial court stated that it had considered the evidence presented, the presentence report, the principles of sentencing, the nature and characteristics of the Defendant's criminal conduct, as well as any mitigating or enhancing factors. The trial court applied enhancement factor (1), that the Defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, based on his criminal history in the presentence report. *See* T.C.A. § 40-35-114. The trial court stated that the fines imposed by the jury would "stand." As to the Defendant's request for an alternative sentence, the trial court specifically stated that the Defendant crashing his car into the pile on and then fleeing the scene with his daughter in the back seat, crying and screaming, did not lend favorably to his request for a probated sentence. The trial court additionally cited the Defendant's criminal history, including recent drug possession, as weighing against his request. The trial court stated that an alternative sentence would depreciate from the seriousness of the Defendant's offense. For those reasons, the trial court ordered the Defendant to serve his sentence in confinement. The trial court imposed a sentence of three years for the evading arrest conviction, eleven months and twenty-nine days for the reckless endangerment conviction,

and six months for the driving with a suspended license conviction, to be served concurrently and in confinement. It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence was insufficient to support his conviction for reckless endangerment. He further contends that the trial court erred when it sentenced him and failed to make statutorily required findings about his ability to pay the fines assessed by the jury. The State responds that the evidence was sufficient to support the Defendant's reckless endangerment conviction. The State further responds that the trial court properly exercised its discretion during sentencing. Finally, the State contends that the Defendant's argument with regard to his fines is waived and that he is not entitled to plain error relief.

## A. Reckless Endangerment Conviction

The Defendant specifically contends that the evidence is insufficient to support this conviction because the State did not present proof that the Defendant put his daughter at risk of death or serious bodily injury. He contends that the proof that she was wearing a seatbelt and was not harmed during the pursuit indicates that this element was not proven beyond a reasonable doubt. The State responds that, viewing the evidence in the light most favorable to the State, a rational juror could have concluded that the daughter was at risk of death or serious bodily harm, based on the Defendant's "excessive speed in a well-trafficked residential neighborhood," and his subsequently losing control of the vehicle causing him to crash the vehicle. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon

direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus[,] the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

A person commits reckless endangerment "who recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a) (2018). Reckless endangerment committed with a deadly weapon is a Class E felony. T.C.A. § 39-13-103(b). "Reckless" refers to a person "who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." T.C.A. § 39-11-106(a)(31). For the threat of death or serious bodily injury to be "imminent," the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger. *See State v. Fox*, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996).

The evidence presented, viewed in the light most favorable to the State, was that the Defendant drove a vehicle at speeds of up to 60 mph through a residential area, while fleeing from police and with his daughter in the backseat. The Defendant had knowledge that the police were pursuing him but chose not to stop. During the pursuit, the Defendant lost control of the vehicle and crashed the vehicle into a concrete barrier, causing damage to the vehicle. The Defendant contends that "traveling in excess of an unknown speed limit," does not, standing alone, establish a reasonable probability of death or serious bodily injury. In our view, the jurors could have reasonably concluded, based on the circumstances surrounding the vehicle pursuit, including but not limited to the vehicle's speed and that he was fleeing from police, that the Defendant placed his daughter at risk of death or bodily injury. The Defendant engaged in conduct, i.e., the reckless operation of his vehicle, that placed his daughter in danger of death or serious bodily injury. The fact that his daughter sustained no serious injuries is irrelevant to the offense. *See State v. Ramsey*, 903 S.W.2d 709, 712 (Tenn. Crim. App. 1995) (citing *State v. Baggett*, 836 S.W.2d 593, 595 (Tenn. Crim. App. 1992)). The Defendant is not entitled to relief on this issue.

## B. Alternative Sentencing

The Defendant contends that the trial court erred when it sentenced him to serve his sentences in confinement and should have granted his request for alternative sentencing. He contends that the trial court improperly applied confinement factor (B), which states that confinement is necessary to avoid depreciating the seriousness of the offense. The State responds that the trial court properly exercised its discretion when it ordered the Defendant to serve his sentences in confinement, based on the circumstances of the offense and the Defendant's prior criminal history. We agree with the State.

It is well settled that this court reviews within-range sentences and alternative sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W. 3d 682, 707 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Once the trial court has determined the appropriate sentencing range, it "is free to select any sentence within the applicable range." *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (citing T.C.A. § 40-35-210(d)). When determining a defendant's sentence and the appropriate combination of sentencing alternatives, trial courts are to consider the following factors:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. *Id.* § 40-35-210(e); *Bise*, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

The 2005 revised sentencing statutes advise that a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

Before imposing a sentence of full confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103 (1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), -103(4). Furthermore, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term

to be imposed." *Id.* § 40-35-103(5). The party appealing a sentence bears the burden of establishing that the sentence was improper. *Id.* § 40-35-401, *Sentencing Comm'n Cmts*.

In imposing a sentence of incarceration, the trial court found that confinement was necessary to protect society, based on the circumstances of the offense, including but not limited to the dangerousness of a high-speed chase with a small child in the vehicle, and due to the Defendant's long history of criminal conduct. The presentence report reflects eighteen prior convictions, dating back to 1988. The report also reflects a number of violations of probation issued against the Defendant. Based on the foregoing, the trial court was within its discretion in imposing a sentence of confinement.

### C. Imposition of Fines

The Defendant lastly contends that the trial court erred when it failed to make specific findings regarding the Defendant's ability to pay the fines imposed by the jury. He contends that, pursuant to Tennessee Code Annotated section 40-35-301(b), the trial court was required to consider the jury's fines and decide whether the fines were appropriate based on the Defendant's "prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors[.]" He requests that this court remand this case for the trial court to make the requisite findings. The State responds that the Defendant failed to request these findings be made during the sentencing hearing and thus he has waived this argument. The State further contends that the Defendant is not eligible for plain error relief. In his reply brief, the Defendant responds that sentencing issues cannot be waived for failure to raise them at sentencing or in a motion for new trial, citing *State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). We agree with the Defendant.

Issues not raised before the trial court are typically waived on appeal. *See* Tenn. R. App. P. 3(e); *State v. Maddin*, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005). Waiver aside, in light of the fact that the Defendant raises an issue concerning the fines imposed on him during sentencing, and in the interest of justice, we elect to review the Defendant's argument on the merits.

If the criminal statute permits a fine of more than $50, the jury shall fix the fine, if any. T.C.A. § 40-35-301(b) (2019). Our supreme court has said that fines imposed as part of a criminal sentence are to be reviewed in the same manner as other aspects of the sentence. *See State v. Taylor*, 70 S.W.3d 717, 722-23 (Tenn. 2002); *State v. Bryant*, 805 S.W.2d 762, 765-66 (Tenn. 1991). The trial court, in imposing the sentence, shall then impose a fine in an amount not to exceed the fine fixed by the jury. *See* 40-35-301(b). The imposition of a fine is to be based upon the factors and principles of sentencing, such as, prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors, that are relevant to an appropriate, total sentence. *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997) (citing *State v. Bryant*, 805 S.W.2d 762, 766 (Tenn. 1991). Thus, the trial court may not simply impose the fine as fixed by the jury. *Id.* This

court reviews a trial court's imposition of a fine, which is part of a defendant's sentence, under an abuse of discretion standard. *State v. Bryant*, 805 S.W.2d 762, 767 (Tenn. 1991); *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

We need not remand the case for further proceedings pertaining to the assessment of the fines, because the record before us is sufficient to justify affirming the amount of the fines imposed by the trial court. The presentence report reflects an extensive criminal history and the Defendant's inability to abide by the conditions of three prior probationary sentences. In our view, the fines imposed in this case are part of an appropriate total sentence, and we conclude that the trial court did not abuse its discretion in its imposition of the fines. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE